# B. W. EMBREE, Appellant, v. J. H. RONEY, Respondent.

**Kansas City Court of Appeals, December 5, 1910.**

1. **CHATTEL MORTGAGES: Possession: Priority.** Although a chattel mortgage is fair on its face, if the mortgagee permits the mortgagor to remain in possession and sell and dispose of the property in the usual course of business for his own benefit, it is void as to creditors.

2. ————: ————: **Intent to Defraud.** Whether a mortgagee, by his conduct, intended to defraud creditors is immaterial if he permitted the mortgagor to deal with the mortgaged property as his own and convert the proceeds to his own use, the intent being measured in such cases by what was done, and not by what was intended.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED AND REMANDED.

*Clark & Joiner, Metcalf, Brady & Sherman* for appellant.

The court of its own motion modified instruction No. 2 as requested by the plaintiff, by adding at the conclusion thereof the words, "But if at the time the mortgage securing plaintiff's notes was taken the mortgagee, W. H. Gatlin or his agent, had notice of possession, if any, of Roney then it is not material whether said possession was notorious or not," the court also gave instruction number four over the objection of the plaintiff and refused instruction "A" as requested by the plaintiff. In this the court committed error. Plaintiff was a purchaser of the notes before maturity and for value, with no actual knowledge of the claims of the defendant. The mortgage which secured his notes passed to him as an incident to the

note, and was not affected by any equities that would not affect the notes. Bank v. Eubanks, 124 Mo. App. 503.

M. G. Roberts, George W. Crowley and Lavelock & Kirkpatrick for respondent.

(1) The mortgage executed March 8, 1909, by Goodyear for benefit of Gatlin was to secure a pre-existing debt without new consideration, and neither Gatlin nor plaintiff were equivalent to bona fide purchasers for value. Dry Goods Co. v. Bank, 81 Mo. App. 283; Board of Trustees v. Fry & Woods, 192 Mo. 563. (2) The Gatlin mortgage was taken to secure a pre-existing debt without any new consideration and with notice of Roney's prior mortgage and possession, therefore, Gatlin and plaintiff held subject to Roney's claim. Jones on Chattel Mortgages, sec. 178, p. 213; Greeley v. Reading, 74 Mo. 309; Bank v. Totten, 114 Mo. App. 108. (3) After Goodyear executed mortgage to Roney he could not sell or mortgage drug stock except subject to Roney's right. Jones on Chattel Mortgages, sec. 462, p. 526; White v. Quinlam, 30 Mo. App. 65. (4) The case was submitted on proper instructions; the verdict was supported by substantial evidence; appellate courts will not weigh conflicting testimony but will accept the jury's verdict as conclusive. Veale v. Greene, 105 Mo. App. 187; Corum v. Railroad, 129 Mo. App. 497.

BROADDUS, P. J.—This is a suit for conversion. Plaintiff claims title to a stock of drugs located in a store at Lawson, Missouri, by virtue of a chattel mortgage dated March 8, 1909, and filed for record March 10. The mortgage was executed by one A. K. Goodyear to secure twenty promissory notes dated September 30, 1907, each for the sum of one hundred dollars, payable consecutively the first day of the

month beginning the first day of April, 1909, bearing interest at the rate of seven per cent and payable to one A. S. Houck. They were endorsed in blank by the payee, and the mortgage was made to E. C. and W. H. Gatlin, the then holders. Subsequently they came. into the hands of plaintiff Embree.

The defendant claims the goods under a prior mortgage executed by Goodyear December 12, 1908, to secure defendant as his surety on a note of that date for money borrowed at the time. This mortgage was filed for record December 14, 1908. It provided that defendant Roney was to have immediate possession of the stock of goods and continue in such possession of the same and receive the proceeds of goods sold and apply them to the payment of the note until the same was fully paid.

The plaintiffs' evidence tends to show that defendant did not take possession of the goods at the date of his mortgage, but that Goodyear was in possession and dealing with them as if they were his own property. That about the 30th day of April, 1909, Goodyear turned the goods over to a Mr. Engle, plaintiff's agent, with the key to the building, at which time plaintiff and Goodyear entered into a contract in writing by the terms of which plaintiff employed Goodyear to work in his store at a compensation of $7.50 per week. This was on Friday. Goodyear remained in the store about an hour and then went to Kansas City, where plaintiff also went. They returned to Lawson on Sunday and were in the store and plaintiff when he went out locked the door and carried the keys. On Monday morning defendant came with a man calling himself a constable, and demanded possession. Plaintiff demanded to know "by what authority," whereupon defendant reached in his pocket and took out some papers and handed them to the constable and the latter said: "I am the constable and this is my authority." Plaintiff then said, "I am in possession and I am going to hold.

it until I am put out; Mr. Goodyear gave me posses-
sion.'' Until the next day plaintiff stayed in the store
all the time and the constable and defendant were also
there a part of the time. In the afternoon of Tuesday
when plaintiff was standing in the door, defendant and
constable closed the door behind him and thus shut
him out and kept him out.

During the time defendant claims to have been in
possession of the goods there was no change from
Goodyear to him in the account kept in the bank. The
new goods were purchased in the name of Goodyear,
and no change was made in the sign on the store, and
there was no outward indications of change of posses-
sion. From the time defendant claims to have been in
possession, Goodyear sold goods in the usual course of
business, and it was made to appear on defendant's
cross-examination that they never had any settlement
because they could not agree upon its terms and that
Goodyear never paid him any of the proceeds of the
sales; that new goods were purchased in the name of
Goodyear and the money taken in was deposited in
his name.

Defendant's evidence went to show that he put
Goodyear in the store as his agent to run it for him;
that he told the latter to attend to it for him and run
it just as ''he had run it,'' as he did not have time to
run it himself; that he would be there every day and
would see everything that was going on, but that he
wanted him (Goodyear) ''to run the whole thing for
him;'' that they consulted almost daily about the busi-
ness; that Goodyear reported to him how the business
was progressing and that they frequently went over
the books of the concern; that Goodyear made reports
to him of everything that was done in the store; what
was bought and what was sold; and that he owned
the building in which the goods were located and that
no rent was paid him after he took possession.

There ws evidence that it was generally known in Lawson that defendant was in possession of the goods on the 12th day of December, 1908. And there was evidence tending to show that the mortgagee Gatlin had notice to the effect that defendant had possession of the goods at the time the mortgage securing plaintiff's notes was taken.

We have endeavored to give only a general idea of the evidence introduced by the parties, but we think enough for the purposes of the case. The defendant recovered judgment and plaintiff appealed.

Plaintiff contends that the court erred in refusing to give instruction 2 in the form as requested, and in modifying the same; in refusing to give Instruction "A" and the giving of Instruction 4.

Instruction 2 as asked reads as follows: "If you believe from the evidence that at the time the defendant claimed to have taken possession of said stock of goods that he took no steps to apprise the community that a change of possession had been made, and that no change in the management and surroundings was made so as to indicate that a change had been made, then you are instructed that no open and notorious change of possession was made as meant in other instructions given herein." The modification consisted in adding the following: "But if at any time the mortgage securing plaintiff's notes was taken, W. H. Gatlin, or his agent, had notice of possession, if any, of Roney then it is not material whether said possession was notorious or not."

Instruction "A" is as follows: "The jury are instructed that although you find that Goodyear was in possession of the stock in controversy as the agent of the defendant, Roney, yet if you further find that said defendant permitted said Goodyear to sell said stock in the usual course of trade and did not require said Goodyear to account to him, the said defendant, for the proceeds derived from such sales and applied said

proceeds on the mortgage debt held by him the said defendant, then your verdict should be for the plaintiff."

Instruction 4 is as follows: "If the jury believe from the evidence that the defendant was in possession of the store and stock of drugs in question on May 4, 1909, and that said Goodyear was staying in and conducting the drug store as agent for said Roney at said date, then the plaintiff is not entitled to recover in this case, even though the jury may further believe from the evidence that the defendant took advantage of the plaintiff's absence from the store on May 4, 1909, and closed the door and excluded the plaintiff therefrom, and thereafter refused to permit the plaintiff to enter the store. Provided you further believe that at the time the mortgage securing plaintiff's notes was taken, the mortgagee, W. H. Gatlin or his agent had notice of the possession, if any, of Roney."

Plaintiff admits that if defendant took possession of the goods at the time the mortgage was executed it is valid and has preference over that under which he claimed, but he denies that defendant had any such possession. The question of such possession, besides the recitation in defendant's mortgage that he was in immediate possession, was one of fact for the jury.

We understand, however, that plaintiff does not rely on the mere proposition that defendant was not in the possession of the goods, but that such possession being of a secret nature it was fraudulent as to plaintiff, therefore not available as a defense as against the mortgagor's creditors.

It is held that although the mortgage is fair on its face if the mortgagee permits the mortgagor to remain in possession and sell and dispose of the property in the usual course of business for his own benefit, the mortgage is void as to creditors. [Bullene v. Barrett, 87 Mo. 189; Ely v. Watkins, 39 Mo. App. 27.] And that: "It is not the right to remain in possession

with power to sell in the ordinary course of business that renders a chattel mortgage fraudulent and void under the first section of our statute of fraudulent conveyance, but it is the right to remain in possession and to sell, and convert the proceeds to the mortgagor's own use that renders the instrument void." [Bank v. Powers, 134 Mo. 445.] These two cases state the rule as held by the appellate courts of this state.

Instruction 2 which plaintiff asked the court to give contained the law as laid down in the two cases last referred to, and should have been given as there was evidence tending to show that the mortgagor was not only selling the goods in the usual course of business but that he was also converting the proceeds to his own use. The one fact alone that Goodyear was permitted to deposit the proceeds of the sale of goods in the bank to his own credit, we think was some evidence tending to show that he had converted them to his own use. It was a circumstance taken in connection with all the other evidence that authorized the submission of the issue raised by the rejected instruction. The qualification made by the court was error. The fact that plaintiff was notified that defendant was in possession under his mortgage could not affect the rights of creditors if defendant's possession was a shield to defraud the mortgagors other creditors. And whether defendant by his conduct, if it was unlawful, intended to defraud other creditors is immaterial if he permitted the mortgagor to deal with the goods as his own and convert the proceeds to his own use. The intent is to be measured in such cases by what was done and not by what was intended.

Instruction 2 and 4 given at the instance of defendant are subject to the objection that they contain the same error as that in the addition to plaintiff's. Plaintiff's instruction numbered "A" should also have been given. For the reasons given the cause is reversed and remanded. All concur.